

**FILED**
NOV 0 9 2007
NOV 09 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBYN WILLIAMS, individually and on behalf of all others similarly situated, | 07CV6387 |
| Plaintiff, | JUDGE COAR |
| -against- | MAG. JUDGE NOLAN |
| SPIN MASTER, LTD., a Canadian Corporation, | CLASS ACTION COMPLAINT |
| Defendant. | JURY TRIAL DEMANDED |

Plaintiff, Robyn Williams ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned counsel, alleges as follows:

NATURE OF THE ACTION

1. Plaintiff brings this action as a Class Action pursuant to Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all persons who purchased Aqua Dots manufactured, marketed, and/or distributed by Spin Master, Ltd. ("Spin Master" or "Defendant"), between April 2007, to the present (the "Relevant Period"), coated with 1,4-butanediol, which if ingested can metabolize into gamma-Hydroxybutyric acid ("GHB"), commonly known as the date rape drug.

2. Despite marketing its Aqua Dots as safe for young children, Defendant distributed this product with a chemical that, if ingested, is poisonous and banned for distribution in the United States and Canada.

3. Since April 2007, Defendant has manufactured or caused to be manufactured, marketed, and/or distributed approximately 4.2 million Aqua Dot products designed for young children, who can be expected to lick, suck, bite, or even swallow the toys, and/or put their hands

in contact with their mouths after touching the toys, thereby ingesting the poisonous elements of the product.

4. The substance GHB, commonly known as the date rape drug, once in a person's system, can cause them to slip into a coma and possibly die. It is not safe for general consumption and its dispensation must be monitored by a physician.

5. On November 7, 2007, the U.S. Consumer Product Safety Commission ("CPSC") announced a recall of the Aqua Dots products. Despite the recall, on information and belief, Defendant has not offered to reimburse Plaintiff or other members of the Plaintiff Class for the costs of the Aqua Dots. Rather, Defendant is offering to provide for replacement toys. Defendant's offer is inadequate and fails to compensate Plaintiff and other members of the Plaintiff Class for their damages or make them whole.

6. The Aqua Dots are not fit for their ordinary use and are of no value to consumers. Consumers purchasing them, including Plaintiff, did not receive the benefit of their bargain.

7. As a result of Defendants' negligent and reckless conduct, Plaintiff's children and the children of members of the Putative Class have been exposed to a known hazardous substance. As a result of such exposure, the children are at an increased risk of becoming severely ill, or even dying.

JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this nationwide class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because: 1) the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs; and 2) at least one member of the Class is a citizen of a different state than Defendant (Defendant is an Alien corporation). *See* 28 U.S.C. § 1332(d)(2)(A). This Court also has personal jurisdiction over Defendant because it does business in this state, and Defendant has sufficient minimum contacts

with this state and otherwise intentionally avails itself of the markets in this state through the promotion, marketing and sale of its products in this state, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in the Northern District of Illinois because Defendant is an alien corporation, with its headquarters and principal place of business in Toronto, Ontario Canada.

### PARTIES

10. Plaintiff Robyn Williams is and has been a resident and citizen of Grady County, Oklahoma, during the Relevant Period. Specifically, Plaintiff owns Aqua Dots purchased from a Wal-Mart Superstore located in Chickasha, Oklahoma, in the month of September 2007. During the Relevant Period, Plaintiff's daughter has played with her recalled Aqua Dots. Plaintiff allowed her child to do so with no expectations that Aqua Dots were made with a hazardous substance and were seriously harmful to her child's health. Plaintiff and other members of Plaintiff Class were deceived because Defendant could not have represented the toys were fit for their ordinary purpose because of the chemical coatings they were made with. Plaintiff and other members of Plaintiff Class would not have purchased the toy had they known of the exposure to the concerned chemicals.

11. Defendant Spin Master Ltd. is a Canadian Corporation doing business in and selling its Aqua Dots throughout the entire United States and Canada. Spin Master sells its products through chain retailers, specialty retailers, and wholesalers. Spin Master operates throughout the world, including in the United States, Canada, Australia, and Asia Pacific.

### STATEMENT OF FACTS

12. Defendant's marketing campaign for Aqua Dots toys is built around assuring parents that its toys are safe for use by children.

13. Plaintiff and other members of the Plaintiff Class were deceived by Defendant's

material omissions and failure to state that its Aqua Dots toys were coated with 1,4-butanediol, a substance that once metabolized, becomes GHB, which is commonly known as the date rape drug.

14. It is believed that the products were intended to be coated with the non-toxic chemical 1,5-pentanediol. It is further believed that at the time the substitution of 1,4-butanediol was discovered, 1,5-pentanediol, a non-toxic ingredient that lacks the harmful effects of 1,4-butanediol, was three to seven times more expensive than the dangerous chemical actually used.

15. Plaintiff purchased the Aqua Dots toy reasonably believing that it was safe for her child to play with as children normally do, including with the knowledge that children often place toys in their mouths, as well as their hands after coming in contact with the toys, while playing.

16. Despite its representation that the Aqua Dots toys were safe for children, but pursuant to Defendant's omissions regarding the hazardous nature of its products, Defendant distributed its Aqua Dots toys, which were manufactured in China, and which contain the chemical 1,4-butanediol.

17. The Aqua Dots toys were sold at various retailers throughout the United States between April 2007 and the present. Defendant distributed approximately 4.2 million of the toys covered with the toxic chemical.

18. The Aqua Dots toys were sold at prices ranging from $17 to as much as $30.

19. Ingestion of 1,4-butanediol, a substance that once metabolized, becomes GHB, commonly known as the date rape drug, is reported to cause vomiting, severe illness, respiratory depression, seizures, slipping into a coma, or even death.

20. Accordingly, Defendant knew or should have known that manufacturing and

distributing Aqua Dots toys coated with 1,4-butanediol, a highly toxic chemical, was dangerous to children and such toys were not safe as Defendant represented them to be.

21. On November 7, 2007, the U.S. Consumer Product Safety Commission ("CPSC") announced a voluntary recall of the Aqua Dots toys. The CPSC Press Release is attached hereto as Exhibit A.

22. As part of the recall, Defendant has offered purchasers of these dangerous toys the ability to obtain a toy of equal value or one which is not coated with 1,4-butanediol.

23. The relief proposed by Defendant is wholly inadequate. Plaintiff seeks a full refund for all amounts spent on this defective toy by herself and all other Plaintiff Class members similarly situated.

CLASS CERTIFICATION

24. This action is brought as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons throughout the United States and its territories who purchased Aqua Dots toys that were coated with the chemical 1,4-butanediol between April 2007 and the present, which were manufactured, imported, marketed, and/or distributed by Defendant.

25. Membership in the Class is so numerous as to make it impractical to bring all Class members before the Court. The identity and exact number of Class members is unknown but can be determined from Defendant. It is estimated to be hundreds of thousands or more.

26. Plaintiff's claims are typical of those of other Plaintiff Class members, all of whom have suffered harm due to Defendant's uniform course of conduct.

27. Plaintiff is a member of the Plaintiff Class.

28. There are numerous and substantial questions of law and fact common to all of the members of the Plaintiff Class which control this litigation and predominate over any individual issues pursuant to Rule 23(b)(3). These common issues include, but are not limited to:

5

a) Whether the products are defective;

b) Whether the products are inherently dangerous;

c) Whether, as a result of Defendant's negligent and reckless conduct, children have been exposed and continue to be exposed to a known hazardous substance;

d) Whether Plaintiff and other members of the Plaintiff Class are entitled to injunctive relief;

e) Whether Defendant has been unjustly enriched; and

f) Whether Plaintiff and Plaintiff Class members were damaged and in what amount.

29.  Defendant's conduct is such that it is appropriate that there be final injunctive relief to enjoin its conduct with respect to the Plaintiff Class as a whole pursuant to Rule 23(b)(2).

30.  A class action is the appropriate method for the fair and efficient adjudication of this controversy for the following reasons:

   a)   Without a class action, the Plaintiff Class will continue to suffer damage, Defendant's violations of the law or laws will continue without remedy, and Defendant will continue to enjoy the fruits and proceeds of its unlawful misconduct;

   b)   Given (i) the substantive complexity of this litigation; (ii) the size of individual Plaintiff Class members' claims; and (iii) the limited resources of the Plaintiff Class members, few, if any, Plaintiff Class members could afford to seek legal redress individually for the wrongs Defendant has committed against them;

   c)   This action will foster an orderly and expeditious administration of Plaintiff Class members' claims, economies of time, effort and expense, and uniformity of decision; and

   d)   Inferences and presumptions of materiality and reliance are available to obtain class-wide determinations of those elements within the Plaintiff Class members' claims, as are accepted methodologies for class-wide proof of damages; alternatively, upon adjudication of Defendant's common liability, the Court can efficiently determine the claims of the individual Plaintiff Class members; and this action presents no difficulty that would impede the Court's management of it as a class action, and a

class action is the best (if not the only) available means by which members of the Plaintiff Class can seek legal redress for the harm caused them by Defendant.

CLAIMS FOR RELIEF

**COUNT I**

(Breach of Implied Warranty Pursuant to the Illinois U.C.C.)

31. Plaintiff re-alleges paragraphs 1 through 30 as if fully set forth herein.

32. Under the Uniform Commercial Code in Illinois and in other states, there exists an implied warranty of merchantability. *See* 810 ILCS 5/2-314.

33. Defendant, in the manufacture, production, and sale of its products impliedly warranted to Plaintiff and other members of the Plaintiff Class that the products were fit for their ordinary purpose, as toys for use by children and, in particular, young children.

34. Defendant breached the implied warranty of merchantability by selling children's toys that are dangerous to children and cannot safely be used for their ordinary purpose.

35. The Aqua Dots toys were in fact unmerchantable because they could not safely be used for their ordinary and intended purpose.

36. Defendant knew or should have known that the products did not meet the capabilities as represented and marketed.

37. Plaintiff and members of the Plaintiff Class have been and will be damaged and have suffered and will suffer direct economic damage, including the cost of the defective product.

38. By reason of the foregoing, Defendant is liable to Plaintiff and the members of the Plaintiff Class in an amount to be proved at trial.

7

## COUNT II

(Breach of Implied Warranty Pursuant to the Magnuson-Moss Warranty Act)

39. Plaintiff re-alleges paragraphs 1 through 30 as if fully set forth herein.

40. The Magnuson-Moss Warranty Act provides for a civil action by consumers for failure to comply with implied warranties arising under state law. *See* 15 U.S.C. § 2310 (d)(1).

41. Defendant, in the manufacture, production, and sale of its products impliedly warranted to Plaintiff and other members of the Plaintiff Class that the products were fit for their ordinary purpose, as toys for use by children and, in particular, young children.

42. Defendant breached the implied warranty of merchantability under Illinois law and other states' laws by selling children's toys that are dangerous to children and cannot safely be used for their ordinary purpose.

43. The Aqua Dots toys were in fact unmerchantable because they could not safely be used for their ordinary and intended purpose.

44. Defendant knew or should have known that the products did not meet the capabilities as represented and marketed.

45. Plaintiff and members of the Plaintiff Class have been and will be damaged and have suffered and will suffer direct economic damage, including the cost of the defective product.

46. By reason of the foregoing, Defendant is liable to Plaintiff and the members of the Plaintiff Class in an amount to be proved at trial.

## COUNT III

(Strict Liability)

47. Plaintiff re-alleges paragraphs 1 through 30 as if fully set forth herein.

48. Defendant is strictly liable for damages because:

    a) it placed the defective product, the Aqua Dots toy covered with a toxic chemical, in the stream of commerce;

    b) the condition of the product—being covered with a toxic chemical—rendered it unreasonably dangerous;

    c) the inherently dangerous condition existed when the product left the control of Defendant; and

    d) the condition represents a proximate cause of injury.

49. Plaintiff and the other members of the Plaintiff Class may recover for economic loss because their damages are proximately caused by Defendant's intentional, false representation that the products are safe when, in fact, they are not, and by Defendant's material omissions.

50. Plaintiff and members of the Plaintiff Class have been and will be damaged and have suffered and will suffer direct economic loss, including the cost of the defective product.

51. By reason of the foregoing, Defendants is liable to Plaintiff and the members of the Plaintiff Class in an amount to be proved at trial.

## COUNT IV

(Negligence)

52. Plaintiff realleges paragraphs 1 through 30 as if fully set forth herein.

53. By manufacturing, marketing, and/or distributing children's toys, Defendant owed

Plaintiff and members of the Plaintiff Class a duty to provide a children's toy free of defects and health hazards.

54. Defendant breached this duty when it manufactured, marketed, and/or distributed toys that were coated with a toxic chemical, 1,4-butanediol, a substance that if ingested, metabolizes into GHB, the date rape drug, and can result in vomiting, severe illness, respiratory depression, seizures, slipping into a coma, or even death.

55. As a direct and proximate result of Defendant's breach, Plaintiff and other members of Plaintiff Class were exposed to the hazard of having their children ingest this highly toxic chemical, and its associated severe risks for illness and death.

56. Plaintiff and the other members of the Plaintiff Class may recover for economic loss because their damages are proximately caused by Defendant's intentional, false representation that the products are safe when, in fact, they are not, and by Defendant's material omissions.

57. Plaintiff and members of the Plaintiff Class have been and will be damaged and have suffered and will suffer direct economic loss, including the cost of the defective product.

58. By reason of the foregoing, Defendant is liable to Plaintiff and the members of the Plaintiff Class in an amount to be proved at trial.

## COUNT V

(Unjust Enrichment)

59. Plaintiff realleges Paragraphs 1 through 30 as if fully set forth herein, and pleads this count in the alternative.

60. Defendant received from Plaintiff and Plaintiff Class members certain monies from their purchase of Aqua Dots toys that are excessive and unreasonable, and are the result of

Defendant's deceptive conduct. The Aqua Dots toys sold by Defendant were unreasonably dangerous and unfit for their intended purpose.

61. As a result, Plaintiff and other members of the Plaintiff Class have conferred a benefit on Defendant, and Defendant has knowledge of this benefit and has voluntarily accepted and retained the benefit conferred on it.

62. Defendant's retention of this benefit further violates principles of fairness, equity, good conscience, social responsibility, and fair dealing.

63. Plaintiff lacks an adequate remedy at law.

64. Defendant will be unjustly enriched if it is allowed to retain such funds, and each Plaintiff Class member is entitled to, at a minimum, an amount equal to the amount each Plaintiff Class member enriched Defendant and for which Defendant has been unjustly enriched.

65. By reason of the foregoing, Defendant is liable to disgorge to Plaintiffs and the members of the Plaintiff Class, at a minimum, the amount by which each Plaintiff Class member enriched Defendant and for which Defendant has been unjustly enriched.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the other Plaintiff Class members request that the Court enter an order or judgment against Defendant including the following:

    a. Certification of the action as a Class Action pursuant to Rule 23(b)(1), (2) and (3) of the Federal Rules of Civil Procedure, and appointment of Plaintiff as Class Representative and Plaintiff's counsel of record as Class Counsel;

    b. Damages in the amount of monies paid for the Aqua Dots toys;

    c. Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited herein;

d. Pre-judgment and post-judgment interest on such monetary relief;

e. Other appropriate injunctive relief;

f. The costs of bringing this suit, including reasonable attorneys' fees, costs, and expenses; and

g. All other relief to which Plaintiff and members of the Plaintiff Class may be entitled at law or in equity.

DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial on any and all counts for which trial by jury is permitted by law.

Dated: November 9, 2007

                    Robyn Williams, individually and on
                    behalf of all others similarly situated,

                    By: /s/ Ben Barnow
                    Ben Barnow
                    Sharon Harris
                    Erich Schork
                    Barnow and Associates, P.C.
                    One North LaSalle Street, Suite 4600
                    Chicago, IL 60602
                    Telephone: (312) 621-2000
                    Facsimile: (312) 641-5504

                    *Attorneys for Plaintiff*

Aron D. Robinson
The Law Office of Aron D. Robinson
19 S. LaSalle Street, Suite 1300
Chicago, IL 60603
Telephone: (312) 857-9050
Facsimile: (312) 857-9054

*Of Counsel:*

Scott R. Tack
Allen Allen & Tack
P.O. Box 1409
210 Chickasha Ave.
Chickasha, OK 73023
Telephone: (405) 224-3111
Facsimile: (405) 224-8312

Lance A. Harke, P.A.
Sarah Clasby Engel, P.A.
Harke & Clasby LLP
155 South Miami Ave., Suite 600
Miami, Florida 33130
Telephone: (305) 536-8220
Facsimile: (305) 536-8229

# Exhibit A

# NEWS from CPSC

## U.S. Consumer Product Safety Commission

Office of Information and Public Affairs                    Washington, DC 20207

FOR IMMEDIATE RELEASE                    **Firm's Recall Hotline: (800) 622-8339**
November 7, 2007                                          CPSC Recall Hotline: (800) 638-2772
Release #08-074                                            CPSC Media Contact: (301) 504-7908

## Spin Master Recalls Aqua Dots – Children Became Unconscious After Swallowing Beads

WASHINGTON, D.C. - The U.S. Consumer Product Safety Commission, in cooperation with the firm named below, today announced a voluntary recall of the following consumer product. Consumers should stop using recalled products immediately unless otherwise instructed.

**Name of Product:** Aqua Dots

**Units:** About 4.2 million

**Distributor:** Spin Master, of Toronto, Canada

**Hazard:** The coating on the beads that causes the beads to stick to each other when water is added contains a chemical that can turn toxic when many are ingested. Children who swallow the beads can become comatose, develop respiratory depression, or have seizures.

**Incidents/Injuries:** CPSC has received two reports over the past several days of children swallowing Aqua Dots. A 20-month-old child swallowed several dozen beads. He became dizzy and vomited several times before slipping into a comatose state for a period of time, was hospitalized, and has since fully recovered. A second child also vomited and slipped into a comatose state and was hospitalized for five days.

**Description:** The recalled toy is a craft kit which allows children to create various multi-dimensional designs using small colored beads. The beads fuse together when sprayed with water. The recall applies to all models of Aqua Dots. The product is available in various different kits with accessories such as a drying fan, applicator pen, design templates for the beads, and spray bottle. The product is labeled for ages 4+.

**Sold at:** Mass merchandisers nationwide from April 2007 through November 2007 for between $17 and $30.

**Manufactured in:** China

**Remedy:** Consumers should immediately take the recalled toy away from children and contact Spin Master to return for free replacement beads or a toy of equal value.

**Consumer Contact:** For additional information, contact Spin Master at (800) 622-8339 between 9

a.m. and 6 p.m. ET Monday through Friday, or visit the firm's Web site at www.aquadotsrecall.com



---

Send the link for this page to a friend! The U.S. Consumer Product Safety Commission is charged with protecting the public from unreasonable risks of serious injury or death from more than 15,000 types of consumer products under the agency's jurisdiction. Deaths, injuries and property damage from consumer product incidents cost the nation more than $700 billion annually. The CPSC is committed to protecting consumers and families from products that pose a fire, electrical, chemical, or mechanical hazard or can injure children. The CPSC's work to ensure the safety of consumer products - such as toys, cribs, power tools, cigarette lighters, and household chemicals - contributed significantly to the 30 percent decline in the rate of deaths and injuries associated with consumer products over the past 30 years.

To report a dangerous product or a product-related injury, call CPSC's hotline at (800) 638-2772 or CPSC's teletypewriter at (800) 638-8270, or visit CPSC's web site at www.cpsc.gov/talk.html. To join a CPSC email subscription list, please go to www.cpsc.gov/cpsclist.aspx. Consumers can obtain this release and recall information at CPSC's Web site at www.cpsc.gov.