IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBYN WILLIAMS, individually and on behalf of all others similarly situated, | Case No. 07CV6387 |
| Plaintiff, | Hon. David H. Coar |
| v. | |
| SPIN MASTER, LTD., a Canadian Corporation, | |
| Defendant. | |

**DEFENDANT'S MOTION TO STAY ALL PROCEEDINGS PENDING TRANSFER
DECISION BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

This lawsuit is substantially similar to six other putative national class actions filed across the country on the heels of the voluntary recall of Aqua Dots, a children's toy manufactured in China. These lawsuits seek economic damages relating to the recall. Defendant Spin Master, Ltd. respectfully moves this Court to stay all proceedings in this action (including the time to answer or otherwise respond to Plaintiff's Complaint) pending resolution of its motion before the Judicial Panel on Multidistrict Litigation ("JPML") for transfer of this case, together with six other cases, to a single court for coordinated pretrial management pursuant to 28 U.S.C. § 1407.[1]

Pending the hoped establishment of a single MDL proceeding, a stay of proceedings is necessary and appropriate to achieve the judicial economies which underlie Section 1407. Absent a stay, the Court would spend valuable time and resources supervising pretrial proceedings and making rulings in a single case over which it may lose jurisdiction and would never see again or, alternatively, may be consolidated here with the other six lawsuits not

---

[1] Defendant is simultaneously seeking a stay in each of the other six cases as well.

currently before this Court.  Should the Court and the other six courts refuse to enter a stay, Defendant would be significantly and unfairly prejudiced as it would have to duplicate discovery in jurisdictions around the country.

## BACKGROUND

This case involves allegations related to a line of toys allegedly distributed by Defendant called "Aqua Dots."  Aqua Dots are craft kits that allow children to create various multi-dimensional designs using small colored beads that fuse together when sprayed with water. Unbeknownst to Defendant, the Chinese manufacturer of Aqua Dots substituted 1,4-butanediol for 1,5-pentanediol in manufacturing the coating on Aqua Dots.  In late October or early November 2007, the Consumer Product Safety Commission received reports that two children were hospitalized after ingesting Aqua Dots coated with 1,4-butanediol.  Defendant worked with the CPSC to voluntarily recall all Aqua Dots products on November 7, 2007.

On November 9, 2007, Plaintiff Robyn Williams filed a class action complaint against Defendant Spin Master, Ltd. purporting to seek certification of a nationwide class action on behalf of consumers who purchased Aqua Dots.  This case is one of seven federal court cases, to date, arising out of the Aqua Dots recall.  All seven of these cases are filed by individual consumers who seek to challenge the adequacy of the CPSC-Spin Master voluntary recall.  All seven of these cases were filed in November 2007.  Each of them names as a defendant Spin Master, Ltd., and five of them also name as a defendant its wholly-owned U.S. subsidiary, Spin Master, Inc.

On January 22, 2008, Defendant and Spin Master, Inc. filed with the JPML a Motion for Consolidation and Transfer of these seven cases because it would be inefficient and inconvenient for all parties to allow pretrial matters to proceed in separate as opposed to consolidated cases.  (A copy of that Motion has been filed in this case as docket 26.)  Defendant

and Spin Master, Inc. have urged that all seven of these cases be transferred by the JPML to either this Court or to a court in the Eastern District of Arkansas.

Defendant expects that the JPML will address the Motion for Consolidation and Transfer at the March 2008 hearing date. No prejudice to discovery will occur in the interim. Defendant has issued a litigation stay, retaining both hard and electronic records. Further, while the CPSC has ordered, as is its usual practice, that the recalled Aqua Dots be destroyed so as to eliminate the risk that they will find their way into the public, Defendant has also agreed to work with Plaintiff's counsel in gaining the CPSC's agreement to set aside a reasonable sample of Aqua Dots for product testing as necessary. The voluntary recalls are moving along appropriately with CPSC regulatory oversight, so no final statistics regarding the recall are available at this time.

There is benefit to be gained by waiting until the MDL Panel decides the consolidation request. If an MDL is created, the JPML will determine which judge should handle the consolidated proceeding. That MDL judge will presumably appoint a Steering Committee of Plaintiffs' counsel and let all parties know of his or her expectations concerning discovery and other pretrial matters. Discovery and depositions will then proceed across all cases, consistent with those expectations. This Court clearly has the authority to suspend discovery in this case under these circumstances. By doing so, this Court would promote efficiencies and economies for both this Court and the parties.

## ARGUMENT AND AUTHORITIES

### I.    THIS CASE SHOULD BE STAYED PENDING THE JPML'S TRANSFER DECISION.

Guided by the "policies of justice and efficiency," this Court should exercise its discretion to stay all further proceedings here pending the JPML's decision. *Boudreaux v. Metropolitan Life Ins. Co.*, No. 95-138, 1995 WL 83788, *1 (E.D. La. Feb. 24, 1995). The power to stay is well established and particularly apt here. It is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *see also Texas Indep. Producers v. Environmental Protection Agency,* 410 F.3d 964, 980 (7th Cir. 2005) (same); *Radio Corp. of America v. Igoe*, 217 F.2d 218, 220 (7th Cir. 1955) (same); *Sonkin v. Barker*, 670 F. Supp. 249, 253 (S.D. Ind. 1987) (same). Numerous courts have stayed proceedings pending determinations by the JPML on the appropriateness of coordination under Section 1407. *See, e.g., U.S. Bank, Nat'l Ass'n v. Royal Indem. Co.*, No. Civ. A 3:02-CV-0853-P, 2002 WL 31114069 (N.D. Tex. Sept. 23, 2002); *Rivers v. The Walt Disney Co.*, 980 F. Supp. 1358 (C.D. Cal. 1997); *American Seafood, Inc. v. Magnolia Processing*, Nos. Civ. A. 92-1030, 92-1086, 1992 WL 102762 (E.D. Pa. May 7, 1992); *Arthur-Magna, Inc. v. Del-Val Fin Corp.*, No. Civ. A. 90-4378, 1991 WL 13725 (D.N.J. Feb. 1, 1991); *Rosenfeld v. Hartford Fire Ins. Co.*, Nos. 88 Civ. 2153 (MJL), 88 Civ. 2252 (MJL), 1988 WL 49065 (S.D.N.Y. May 12, 1988); *Portnoy v. Zenith Labs.*, No. Civ. A. 86-3512, 1987 WL 10236 (D.D.C. Apr. 21, 1987).

When deciding whether to issue a stay pending a decision by the JPML, courts look at (1) considerations of judicial economy and (2) relative prejudice to the parties. *Rivers*, 980 F. Supp. at 1360. As described below, consideration of both these factors favor this Court granting a stay of this action.

**A.      Judicial Economy Mandates a Stay.**

If this case and the other six cases are transferred to a single court by the JPML, that court will establish discovery and pretrial proceedings for all of the cases.  Because of this, much work would be needlessly duplicated if pretrial proceedings and discovery continue to go forward before the JPML has an opportunity to rule.

For example, if this Court were not to issue a stay, it could well make rulings that would be reconsidered were the case to be transferred.  As the court in *U.S. Bank* noted in granting the defendant's motion to stay, "[i]f the MDL motion is granted, all of the Court's time, energy, and acquired knowledge regarding the action and its pretrial procedures will be wasted." *U.S. Bank*, 2002 WL 31114069 at *2.  The Court should not expend its limited resources "familiarizing itself with the intricacies of a case that would be heard by another judge." *Rivers*, 980 F. Supp. at 1360.  Even holding status conferences or issuing discovery orders can be inefficient.  "[E]fforts on behalf of this Court concerning case management will most likely have to be replicated by the judge that is assigned to handle the consolidated litigation." *Id.* Similarly, in granting a stay the court in *Rivers* explained "there are no guarantees that an order by this Court would not later be vacated and this Court's investment of time and resources would have been in vain." *Rivers*, 980 F. Supp. at 1361.  In fact, if this case is transferred to an MDL, it is possible that this Court will never see this case again: most cases are resolved at the MDL stage, and the percentage transferred back to the original transferor court is typically in the low single digits.  *See* Marc Galanter, *The Vanishing Trial:  An Examination of Trials and Related Matters in Federal and State Courts*, 1 J. Emp. Leg. Studies 459 (2004), *available at* http://www.abanet.org/litigation/vanishingtrial/vanishingtrial.pdf.

Even if the JPML consolidates the seven actions for pretrial proceedings before this Court, any matters addressed in the single case likely would need to be decided anew after the arrival in this Court of the parties from the other six actions, thus little or no time advantage would be gained by the effort. To avoid the risk of inconsistent legal rulings, duplicative pretrial proceedings, duplicative discovery orders, and the waste of judicial resources, this Court should stay the proceedings.

**B.    Without a Stay, Defendant Will Be Unnecessarily Prejudiced While Plaintiff Will Suffer Minimal or No Prejudice.**

In addition to the waste of judicial resources inherent in proceeding with this matter prior to a decision by the JPML, Defendant would be substantially prejudiced by duplicative discovery and motion practice if a stay is not put in place. *See American Seafood*, 1992 WL 102762 at *2 (holding that "[t]he duplicative motion practice and discovery proceedings demonstrate that judicial economy and prejudice to defendants weigh heavily in favor of a stay"). Without a stay, the risk exists that Defendant will have to produce its witnesses multiple times in different jurisdictions. Moreover, Defendant will be required to respond to redundant written discovery requests.

Similarly, the consolidation of these seven cases for pretrial proceedings will likely result in the filing of a consolidated amended complaint, to which Defendant will then answer or otherwise respond. Without a stay pending a decision by the JPML, Defendant will eventually be required to expend its resources unnecessarily in responding to seven complaints.

In contrast, a stay will not unduly prejudice Plaintiff in this matter, who must be deposed only once, and in only one case. Plaintiff will not be prejudiced by a limited delay, either in discovery or in receiving an answer to the Complaint. This Court should therefore stay all proceedings in this matter pending a decision by the JPML.

## **CONCLUSION**

For the reasons set forth above, Defendant respectfully requests that this Court grant its Motion To Stay All Proceedings Pending Transfer Decision by the JPML.

Respectfully submitted,

SPIN MASTER, LTD.

By: /s/ Thomas J. Wiegand
    One of its attorneys

Ronald Y. Rothstein
Thomas J. Wiegand
Bryna J. Dahlin
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Telephone (312) 558-5600
Facsimile (312) 558-5700
rrothstein@winston.com
twiegand@winston.com
bdahlin@winston.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 22, 2008, I filed the above and foregoing with the

Court's ECF system and by doing so served a copy on all the parties.


/s/ Thomas J. Wiegand_____
ATTORNEY FOR SPIN MASTER